J-A27007-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ISIAH BOYD AND ALISHA BOYD | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| ACCURATE TRASH REMOVAL AND ACCURATE RECYCLING CORPORATION AND ACCURATE WASTE SERVICES AND ACCURATE METALS AND WILLIAM CORBITT | |
| Appellants | No. 571 EDA 2016 |

Appeal from the Judgment Entered January 12, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): Case ID 140701861,
July Term, 2014, No. 01861

BEFORE:  PANELLA, J., LAZARUS, J., and FITZGERALD, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED MARCH 20, 2017**

Accurate Trash Removal, Accurate Recycling Corporation, Accurate Waste Services, Accurate Metals and William Corbitt (collectively, "Accurate"), appeal from the judgment entered in the Court of Common Pleas of Philadelphia County following the entry of a jury verdict in favor of Appellees, Isiah and Alisha Boyd (collectively, "Boyds"), for damages arising out of a motor vehicle accident.  Upon review, we affirm in part, reverse in part, and remand for proceedings in accordance herewith.

_____

[*] Former Justice specially assigned to the Superior Court.

On July 31, 2012, Isiah Boyd was working as a SEPTA bus driver when his vehicle was struck head-on by an Accurate trash truck. Boyd suffered head, neck and lower back injuries. Boyd filed a workers' compensation claim against SEPTA, claiming to have been totally disabled as of the date of the accident. The workers' compensation judge ("WCJ") ultimately determined that Boyd had suffered injury to his head and neck, which resulted in post-concussion syndrome, neck sprain, and cervical headache. The WCJ found that Boyd was totally disabled as a result of the accident, but only through the date of October 25, 2012, at which time the WCJ concluded Boyd had fully recovered from his injuries.

On July 17, 2014, Boyd and his wife, Alisha, filed a complaint against Accurate, seeking damages for the injuries sustained by Boyd and loss of consortium damages on behalf of Alisha. On February 3, 2015, Accurate filed a motion for partial summary judgment seeking to preclude the Boyds from recovering damages for injuries beyond those found by the WCJ, based on the doctrine of collateral estoppel. The motion was denied and the matter set for trial in October 2015.

Prior to trial, on September 15, 2015, Accurate filed a motion *in limine*, seeking to preclude Boyd from presenting any evidence of, or being awarded any damages for, injuries existing after October 25, 2012, also based on the doctrine of collateral estoppel. The motion was denied. Accurate also requested a jury instruction, based on the doctrine of collateral

estoppel, limiting the Boyds' recovery to damages allegedly sustained prior to October 25, 2012. The trial court denied this instruction.

Trial commenced on October 6, 2015, during which the Boyds and their medical expert were allowed to testify as to injuries and complaints experienced after October 25, 2012. On October 8, 2015, the jury returned a verdict in favor of Isiah Boyd in the amount of $700,000 and for Alisha Boyd in the amount of $50,000. On October 13, 2015, the Boyds filed a motion for delay damages pursuant to Pa.R.C.P. 238(c). On October 16, 2015, Accurate filed post-trial motions, requesting that the court reconsider its prior rulings regarding the application of the doctrine of collateral estoppel. By orders dated December 29, 2015, the trial court denied Accurate's motion for post-trial relief and granted the Boyds' motion for delay damages in favor of both Isiah and Alisha Boyd. Pursuant to a *praecipe* filed by the Boyds, judgment was entered on the docket on January 12, 2016.

This timely appeal follows, in which Accurate raises the following questions for our review:

> 1. Whether the trial court erred by denying [Accurate's] [m]otion for [p]artial [s]ummary [j]udgment[,] which sought to limit the nature and scope of [the Boyds'] injuries and recoverable damages pursuant to the doctrine of collateral estoppel based upon the prior decision entered by [the WCJ] on April 7, 2014[,] in [Isiah Boyd's] workers' compensation proceeding[,] at which time it was judicially determined that [Isiah Boyd] had fully recovered from his injuries by October 25, 2012.

- 3 -

2. Whether the trial court erred by denying [Accurate's] [m]otion *in* [*l*]*imine* to [p]reclude [c]ertain [t]estimony and [c]ertain [m]edical [r]eports which, pursuant to the doctrine of collateral estoppel, sought to limit [the Boyds'] argument, testimony and evidence regarding their alleged injuries and damages insofar as the prior decision by [the WCJ] in [Isiah Boyd's] workers' compensation proceeding judicially determined that [Isiah Boyd] had fully recovered from his injuries by October 25, 2012.

3. Whether the trial court erred by denying [Accurate's] requested jury instruction which sought to limit [the Boyds'] recoverable damages in this matter based upon the doctrine of collateral estoppel insofar as the prior decision by [the WCJ] on April 7, 2014[,] in [Isiah Boyd's] workers' compensation proceeding judicially determined that [Isiah Boyd] had fully recovered from his injuries by October 25, 2012.

4. Whether the trial court erred by granting [the Boyds'] [m]otion for [d]elay [d]amages when the verdict upon which such damages were calculated was based upon argument, evidence and testimony which should not have been permitted insofar as the prior ruling of [the WCJ] in [Isiah Boyd's] workers' compensation proceeding judicially determined that [Isiah Boyd] had fully recovered by October 25, 2012[,] and, therefore, should have collaterally estopped [the Boyds] from relitigating the issue of [Isiah Boyd's] injuries.

5. Whether the trial court erred by granting [Alisha Boyd's] [m]otion for [d]elay [d]amages insofar as delay damages under Pa.R.C.P. 238 are not recoverable for loss of consortium claims.

6. Whether the trial court erred in denying [Accurate's] [m]otion for [p]ost-[t]rial [r]elief and request for new trial insofar as the verdict was based upon argument, evidence and testimony which should not have been permitted insofar as the prior ruling of [the WCJ] in [Isiah Boyd's] workers' compensation proceeding judicially determined that [Isiah Boyd] had fully recovered by October 25, 2012[,] and, therefore, should have collaterally estopped [the Boyds] from relitigating the issue of [Isiah Boyd's] injuries.

7. Whether the trial court erred by entering judgment in favor of [the Boyds] and against [Accurate] when the verdict was based upon argument, evidence and testimony which should not have been permitted insofar as the prior ruling of [the WCJ] in [Isiah

- 4 -

Boyd's] workers' compensation proceeding judicially determined that [Isiah Boyd] had fully recovered by October 25, 2012[,] and, therefore, should have collaterally estopped [the Boyds] from relitigating the issue of [Isiah Boyd's] injuries.

Brief of Appellants, at 8-10.

Six of Accurate's seven appellate issues are grounded in its claim that the trial court erred in holding that the doctrine of collateral estoppel did not apply to bar evidence, argument, and testimony regarding injuries and damages alleged to have been sustained by the Boyds after October 25, 2012, the date the WCJ determined that Isiah Boyd had fully recovered from his injuries.

The doctrine of collateral estoppel precludes relitigation of an issue determined in a previous action if: (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. *Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 50–51 (Pa. 2005) (citation omitted). Collateral estoppel relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and, by preventing inconsistent decisions, encourages reliance on adjudication. *Id.*

In her opinion, the Honorable Ellen Ceisler correctly concludes that, because of the specific statutory framework within which workers'

compensation cases are adjudicated, a determination by a WCJ that a claimant is not "disabled" as of a certain date does not preclude recovery, in a civil tort action, for non-economic damages stemming from the same injury. *See* Trial Court Opinion, 4/13/16, at 6-8. Because Judge Ceisler's opinion thoroughly and correctly disposes of this issue, we affirm her rulings as to Accurate's appellate issues numbered 1-4 and 6-7 on the basis of her well-reasoned opinion.

Finally, Accurate asserts that the trial court erred in awarding delay damages to Alisha Boyd, as such damages are only available with regard to claims "seeking monetary relief for bodily injury, death or property damage." Pa.R.C.P. 238(a). As to this claim, Accurate is correct and Judge Ceisler concedes as much in her opinion. *See* Trial Court Opinion, 4/13/16, at 8, citing ***Anchorstar v. Mack Trucks, Inc.***, 620 A.2d 1120, 1121 (Pa. 1993) (under clear and express language of Rule 238, delay damages are not applicable to claim of loss of consortium). Accordingly, we reverse the award of delay damages to Alisha Boyd and remand for the purpose of permitting the trial court to modify its order accordingly.

Judgment affirmed in part and reversed in part. Case remanded for further proceedings in accordance with the dictates of this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/20/2017

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| **ISIAH BOYD**, et al. | : | **SUPERIOR COURT** |
| Plaintiffs-Appellees | : | **571 EDA 2016** |
| | : | |
| | : | **COURT OF COMMON PLEAS** |
| | : | **140701861** |
| | : | |
| **v.** | | Boyd Etal Vs Accurate Trash Removal Etal-OPFLD |
| | | |
| **ACCURATE TRASH REMOVAL**, et al. | | |
| Defendants-Appellants | | 14070186100111 |
| | : | |

**OPINION**

**ELLEN CEISLER, J.**                    **DATE: April 13, 2016**

## I.    FACTS AND PROCEDURAL HISTORY

The instant appeal, filed by Defendants-Appellants Accurate Trash Removal, Accurate Recycling Corporation, Accurate Waste Services, Accurate Metals, and William Corbitt (collectively "Appellants") on February 5, 2016, arises from this Court's December 29, 2015 orders denying Appellants' Motion for Post-Trial Relief ("Post-Trial Motion") and granting Plaintiffs-Appellees Isiah and Alisha Boyd's (husband/wife) Motion for Delay Damages. These rulings occurred after a jury unanimously awarded $700,000 to Mr. Boyd in damages regarding his negligence and negligent entrustment claims against Appellants, and $50,000 to Mrs. Boyd for the loss of Mr. Boyd's consortium, due to Appellants' liability for causing a motor vehicle accident that injured Mr. Boyd on July 31, 2012.[1] N.T. 10/6/15 at 48; N.T. 10/7/15 at 22; N.T. 10/8/15 at 62-63. As will be discussed in detail *infra*, Appellants' appeal should be denied in full

---

[1] Appellants conceded negligence and stipulated that they accepted liability, as well as that Mr. Boyd had been injured to some degree as a result of this accident. *See* N.T. 10/6/15 at 68.

1

with regard to their Post-Trial Motion, and granted in part as to the Boyds' Motion for Delay Damages.

The following facts are presented in the light most favorable to the Boyds, as the verdict winner:

On July 31, 2012, Mr. Boyd, a long-time SEPTA driver, was operating a bus along Lancaster Avenue in Lower Merion, Pennsylvania when, at some point, he brought the vehicle to a halt at a stoplight and prepared to make a turn. *See* Motion in Limine, Ex. B at 4; N.T. 10/7/15 at 22. While Mr. Boyd was waiting at this stoplight, an Accurate Trash Removal truck driven by William Corbitt hit Mr. Boyd's bus head-on, knocking Mr. Boyd unconscious. *See* Motion in Limine, Ex. B at 4; N.T. 10/6/15 at 28, 38; *see also* N.T. 10/8/15 at 52 (Appellants' attorney agreeing that accident occurred as described by Mr. Boyd). Mr. Boyd briefly regained consciousness as the force of this impact thrust his bus towards the side of the road, but quickly blacked out a second time. N.T. 10/7/15 at 22-23. In the immediate aftermath of this accident, Mr. Boyd was taken via ambulance from the scene to nearby Lankenau Hospital. Id.; Motion in Limine, Ex. B at 4. He was subsequently discharged that same day, whereupon he went to a SEPTA depot for debriefing and then went home. At trial, Mr. Boyd was unable to recall what treatment he received at Lankenau, nor how he got to the depot or to his house afterwards. N.T. 10/7/15 at 23-24, 27.

Mr. Boyd continued to experience head, neck, and lower back pain as a result of the accident, prompting him to seek medical treatment from mid-August 2012 onwards. *See* id. at 27-30; Motion in Limine, Ex. B at 4-5. He was diagnosed as having suffered "a cervical concussion, post-concussion headache syndrome, traumatic brain syndrome, acute traumatic sprain and strain of the cervical spine, acute sprain and strain of the lumbar spine, L5 radiculopathy and acute traumatic myofascitis of the lumbar spine as a result of the bus accident," all of which was treated through a combination of pain-relief medication and physical rehabilitation. *See* N.T. 10/7/15 at 27-30; Motion in Limine, Ex. B at 4-5. Though this treatment regimen eventually helped Mr. Boyd recover from his physical injuries, he continued to suffer chronic headaches. N.T. 10/7/15 at 31.

2

On November 12, 2012, Mr. Boyd filed a workers' compensation claim against SEPTA claiming that he had become totally disabled as a result of the July 31, 2012 accident. Motion in Limine, Ex. B at 4. SEPTA contested this claim, arguing that Mr. Boyd was malingering and that he had fully recovered from the accident as of October 25, 2012. In support of their position, SEPTA highlighted what was reported by the SEPTA doctor as Mr. Boyd's uncooperative and evasive behavior during his Oct. 25, 2012 examination of Mr. Boyd. Id. at 5-6.

On April 7, 2014, after considering both Mr. Boyd's and SEPTA's respective arguments, the Honorable Workers' Compensation Judge Sarah Makin ruled that Mr. Boyd had in fact been injured as a result of the accident, and that these injuries had occurred "in the course and scope of his employment as a bus driver". However, Judge Makin did not find him to be otherwise credible, stating that Mr. Boyd's "composure and demeanor [during live testimony] does not support his veracity," and that he "engages in behavior designed to portray him as more disabled and mentally challenged that he is in reality." Id. Consequently, Judge Makin was not persuaded that the July 31, 2012 accident had rendered Mr. Boyd permanently disabled, and found that he had "recovered from his work injury [i.e. his head and neck issues] effective October 25, 2012." Judge Makin awarded Mr. Boyd disability benefits for only the period of time between these two dates. Motion in Limine, Ex. B at 6-7.[2] Mr. Boyd subsequently returned to his job as a SEPTA driver, and worked a "split shift"[3] totaling 40 hours per week. N.T. 10/7/15 at 34.

On July 17, 2014, the Mr. and Mrs. Boyd filed suit against Appellants. Mr. Boyd alleged numerous ongoing symptoms as a result of the accident, including post-concussion syndrome, which was adversely affecting his quality of life. Additionally, Mrs. Boyd bought a Loss of Consortium claim against the Appellants. Complaint at 5-8. Appellants filed their Answer with New Matter on October 9, 2014. They followed this response by docketing a Motion for Partial Summary Judgment on February 3, 2015, in which they argued that Judge Makin's workers'

---

[2] Judge Makin also awarded Mr. Boyd 10% interest on the total amount of disability benefits, approved an agreement that directed 20% of the total award to Mr. Boyd's attorney, and ordered SEPTA to pay for the medical treatment that Mr. Boyd had received through October 25, 2012, as well as for his litigation costs. Motion in Limine, Ex. B at 7.

[3] According to Mr. Boyd, such a shift consists of four hours of driving, a four hour break, and then three more hours on duty. N.T. 10/7/15 at 34.

3

compensation ruling collaterally estopped Mr. Boyd "from recovering damages for injuries beyond post-concussion syndrome, neck sprain and cervical headache... from making a claim for permanent disability and permanent impairment of his earning power and capacity... [and] from making a claim for further medical expenses and income loss." Motion for Summary Judgment at 10. Appellees responded in opposition on March 3, 2015, and the Motion was denied by the Honorable Esther Sylvester on March 16, 2015. Sylvester Order, 3/16/15 at 1. Appellants subsequently filed a Motion in Limine on September 15, 2015, wherein they again raised their prior collateral estoppel argument. In this motion, Appellant's further sought to preclude Appellees from seeking damages beyond those awarded by Judge Makin, or from presenting any evidence at trial about Mr. Boyd's condition beyone between July 31, 2012 (the accident date) and October 25, 2012 (Mr. Boyd's date of recovery, as determined by Judge Makin). Motion in Limine at 2-4. On October 2, 2015, Appellee's filed a response arguing that Judge Makin did not have jurisdiction to make a determination regarding their ability to seek non-economic damages in a lawsuit against a third party and thus they were collaterally estopped from seeking such damages in the instant matter. Response to Motion in Limine at 6-9.[4] By Order dated 10/6/15, this Court denied Appellants' Motion in Limine. Ceisler Order, 10/6/15 at 1.

The case proceeded to a jury trial before this Court on October 6, 2015. Over the course of two days, both Mr. and Mrs. Boyd testified that the accident, and the ensuing post-concussion syndrome had caused Mr. Boyd to experience ongoing emotional, mental, and physical symptoms and deficits. They described Mr. Boyd as having been transformed from a gregarious and extroverted person with close relationships to family and friends, to a moody introvert who regularly suffered from memory lapses, light sensitivity, and headaches. *See* N.T. 10/6/15 at 44-65 (testimony from Mrs. Boyd); N.T. 10/7/15 at 30-40, 51-52 (testimony from Mr. Boyd). In addition, Appellees and Appellants respectively presented videotaped depositions from Dr. Michael Cohen and Dr. Paul Shipkin. Id. at 5, 69. Dr. Cohen opined that Mr. Boyd was suffering

---

[4] The Boyds also contended that the Motion in Limine could not be granted due to the coordinate jurisdiction doctrine, as the issues raised therein had already been addressed by Judge Sylvester through her March 15, 2015 order, and that Appellants had waived their ability to raise the defense of collateral estoppel due to their failure to plead it in their Answer with New Matter. Response to Motion in Limine at 9-11.

4

from "post-concussion syndrome," which was manifesting itself as "the thinking problems [Mr. Boyd has] had, the behavioral ... depression... anxiety, and his headaches," and that these conditions were permanent." Cohen Deposition at 39. By contrast, Dr. Shipkin testified that he believed Mr. Boyd was exaggerating his symptoms, and that Mr. Boyd "had recovered fully from the post-concussion syndrome." Shipkin Deposition at 18-25. The parties presented closing arguments on October 8, 2015, after which this Court charged the jury. *See* N.T. 10/8/15 at 53-54, 56. The jury returned a unanimous damages verdict in favor of the Boyds, awarding Mr. Boyd $700,000 and Mrs. Boyd $50,000. Id. at 62-63; Trial Worksheet at 1.

On October 13, 2015, Appellees filed a Motion for Delay Damages, to which Appellants responded in opposition on October 27, 2015. On October 16, 2015, Appellants docketed a Motion for Post-Trial Relief. This Court then ordered the parties to file supplemental briefs addressing the issues raised in this Motion for Post-Trial Relief and, after considering the arguments presented in the parties' respective submissions, denied Appellants' Motion on December 29, 2015. Ceisler Order, 10/19/15 at 1; Ceisler Order, 12/29/15 #2 at 1. Additionally, this Court granted the Boyds' Motion for Delay Damages, ordering Appellants to pay Mr. Boyd an extra $4,890.60 and Mrs. Boyd an additional $349.20. Ceisler Order, 12/29/15 #1 at 1. These rulings prompted Appellants to file the instant appeal with the Superior Court on February 5, 2016.[5] This Court then issued an order on February 8, 2016, directing Appellants to provide a Statement of Errors pursuant to Pa. R.A.P. 1925(b). Their response was received by this Court on February 25, 2015 and is attached to this opinion as Appendix A.

---

[5] The parties were not notified of this Court's December 29, 2015 decisions until January 11, 2016. As such, Appellants' appeal was filed in a timely fashion. *See* Frazier v. City of Phila., 735 A.2d 113, 115 (Pa. 1999); Pa. R.A.P. 108(b) ("The date of entry of an order in a matter subject to the Pennsylvania Rules of Civil Procedure shall be the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa. R.Civ.P. 236(b).").

5

## II.    DISCUSSION

This Court respectfully requests that the instant appeal be denied in part and granted in part for the following reasons:

1. The workers' compensation decision did not collaterally estop Appellees from asserting their third party claim against Appellants seeking non-economic damages resulting from the accident;

2. As delay damages cannot be awarded for loss of consortium claims, this Court erred by granting Appellee's Motion for Delay Damages in full.

Six of the seven errors alleged by Appellants center upon the issue of whether Judge Makin's worker compensation opinion which declared that Mr. Boyd had "fully recovered from his work injury effective October 25, 2012," collaterally estopped Appellees from bringing the instant litigation wherein Appellees seek non-economic damages for ongoing problems resulting from the July 31, 2012 accident. *See* Statement of Errors at 1-4.

"Collateral estoppel, or issue preclusion… prevents re-litigation of an issue in a later action, despite the fact that it is based on a cause of action different from the one previously litigated." Balent v. City of Wilkes-Barre, 564, 669 A.2d 309, 313 (Pa. 1995) (citation omitted). This doctrine can only be invoked where:

> (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.

City of Pittsburgh v. Zoning Bd. of Adjustment of City of Pittsburgh, 559 A.2d 896, 901 (Pa. 1989) (citations omitted).

After reviewing Judge Makin's opinion, this Court concluded that the first prong of this test was not satisfied. Under the Workers' Compensation Act[6] ("WCA"), a claimant must establish three things in order to receive disability benefits: 1. He was injured; 2. The injury was

---

[6] 77 P.S. § 1 *et seq.*

6

work-related; and 3. Such work-related injury was so significant as to render the claimant unable to perform his pre-injury work. Nelson v. Heslin, 806 A.2d 873, 877 (Pa. Super. Ct. 2002) (*citing and quoting* Kmart v. W.C.A.B. (Williams), 771 A.2d 82, 85 (Pa. Cmwlth. Ct. 2001)). This statutory framework establishes distinct definitions of "injury" and "disability," though inaccurate assumptions regarding their putative interchangeability have arisen over time due to sloppy usage of these terms. Id. (*citing and quoting* Volk v. W.C.A.B. (Consolidation Coal Co.), 647 A.2d 624, 628 (Pa. Cmwlth. Ct. 1994) *abrogated on unrelated grounds by* Stanek v. W.C.A.B. (Greenwich Collieries), 756 A.2d 661 (Pa. 2000)); *see also* Woodward v. Pittsburgh Eng'g & Constr. Co., 143 A. 21, 22-23 (Pa. 1928) ("The disability contemplated by the [WCA] is the loss, total or partial, of the [claimant's] earning power [stemming] from the injury."). By contrast, "a showing of disability is not required to successfully litigate a third-party tort action… [which merely obliges a litigant to show] that he suffered some compensable injury as a result of the negligence of another." Nelson, 806 at 878.

In practical terms, this means a determination that a claimant is not disabled, or that the claimant was disabled for a period of time but has subsequently recovered, does not speak to the separate issue of whether the claimant was *actually* injured in the first place. Thus, disability-related findings in a workers' compensation case cannot be used to collaterally estop the claimant from claiming injury and seeking damages in a subsequent suit; rather, such preclusion can only be successfully accomplished in a situation where the workers' compensation process resulted in a final ruling that the claimant sustained *no injury whatsoever*. Id.

Here, Judge Makin ruled that Mr. Boyd sustained head and neck injuries as a result of the July 31, 2012 accident, which consequently left him totally disabled for a period of roughly three months, but that he had fully recovered from these injuries as of October 25, 2012." Judge Makin's finding of subsequent recovery, however, merely meant that Mr. Boyd was no longer *disabled* (i.e. these injuries had ceased to impact his earning power) as of October 25, 2012 and, thus, that he was not entitled to workers' compensation-based disability benefits after that date. As the question of Mr. Boyd's "disability" is distinct and separable from that regarding whether he was injured in the accident, and in light of Judge Makin's holding that such injury did occur,

7

Appellants' claim does not satisfy the first prong of the collateral estoppel test and fails as a matter of law. Therefore, this Court properly declined to apply this doctrine in this situation.

Moreover, the damages sought by and awarded to the Boyds' in this matter were of a distinctly different type than those granted to Mr. Boyd through the workers' compensation process. As noted above, Judge Makin awarded Mr. Boyd disability benefits covering the time period between the accident date (July 31, 2012) and the date by which she deemed Mr. Boyd to have recovered from the accident (October 25, 2012). Motion in Limine, Ex. B at 6. These benefits, which were awarded to Mr. Boyd due to his loss of earning potential, were *economic* damages. By contrast, the Boyds' damages in this case were the result of their accident-related, physical and psychological suffering. *See* Complaint at 5-8; N.T. 10/8/15 at 56. As they were *non-economic* in nature, there was thus no overlap between these damages and those given to Mr. Boyd on account of his workers' compensation claim.

Finally, Appellants' remaining allegation of error is that this Court improperly granted the Boyds' Motion for Delay Damages, as Mrs. Boyd was permitted to recover delay damages regarding her loss of consortium claim. Statement of Errors at 3. Under Pennsylvania law, such damages are to be awarded only with regard to claims "seeking monetary relief for bodily injury, death or property damage." Pa. R.C.P. 238(a). As loss of consortium does not fall within one of these categories of harm, a litigant such as Mrs. Boyd thus cannot receive delay damages, meaning that this Court erred by granting the Boyds' Motion for Delay Damages in full. *See* Anchorstar v. Mack Trucks, Inc., 620 A.2d 1120, 1121-22 (Pa. 1993). Accordingly, this case should be remanded for the sole purpose of permitting this Court to modify its order granting the Boyds' Motion, so as to deny Mrs. Boyd's request for delay damages.

8

## III. CONCLUSION

For the aforementioned reasons, this Court respectfully requests that the instant appeal be denied in part and granted in part.

BY THE COURT:

_____
                                              J.